UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


YANCEY & JAMIESON, INC.,

                                        CIVIL ACTION

                    Plaintiff,

                                        No. 3:14-00413-JWD-EWD

VERSUS


MAPP CONSTRUCTION, L.L.C., and

TRAVELERS CASUALTY AND

INSURANCE COMPANY OF

AMERICA,


                    Defendants.


**ORDER ON MOTION TO VACATE ARBITRATOR'S AWARD FILED ON BEHALF**
**OF YANCEY & JAMIESON, INC.**


**I.      INTRODUCTION**

        Before the Court is the Motion to Vacate Arbitrator's Award Filed on Behalf of Yancey

& Jamieson, Inc. ("Motion"), (Doc. 28), submitted by Yancey & Jamieson, Inc. ("Y&J," "Y &

J," or "Plaintiff"). Mapp Construction, LLC ("Mapp") and Travelers Casualty and Insurance

Company of America ("Travelers") (collectively, "Defendants") have countered the Motion with

the Defendants' Memorandum in Opposition of [sic] the Motion to Vacate Arbitrator's Award

("Opposition"). (Doc. 32.)  The Plaintiffs have responded with the Reply Memorandum on

Behalf of Yancey & Jamieson, Inc. ("Reply"). (Doc. 35.)  Having considered the arguments advanced by Plaintiff and Defendants (collectively, "Parties"), this Court can find no basis in the controlling statute, the Louisiana Binding Arbitration Law ("Arbitration Act"), codified in LA. R.S. § 9:4201 *et seq.*,[1] to void the award calculated by the the Parties' freely chosen arbitrator, the standard for such action both high and well-established. With no fraud, corruption, misconduct, or excess discernible from the existing record and with Plaintiff bearing the burden of proving any such misdeed, the law leaves this Court with no option. That such a result may strike one party as harsh cannot be relevant, and the possibility that either this Court or a jury may have weighed the evidence somewhat (or even completely) differently is wholly immaterial. Accordingly, for these reason, as more fully explained below, this Court DENIES the Motion, (Doc. 28).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      FACTUAL HISTORY

### 1.      Pre-Arbitration Events

A foreign entity incorporated under the laws of the State of Georgia, (Doc. 12 at 1; Doc. 14 at 1), Y&J supplied Mapp, a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana, (Doc. 12 at 1; *see also* Doc. 10 at 3), with insulated metal wall panels ("IMP") in connection with the latter's building efforts at Little Woods Elementary School, located at 10200 Curran Boulevard in New Orleans, Louisiana ("Project"). (Doc. 28-3 at 1; *see also, e.g.*, Doc. 32-1 at 1; Doc. 28-3 at 11; Doc. 28-4 at 11.) Throughout this Project,

---

[1] In this order, any and all reference to "Section []" or "§ []" are to the ninth title of Louisiana's Revised Statutes.

Mapp served as the general contractor, hiring and utilizing numerous subcontractors. (Doc. 28-3 at 11.) On July 16, 2012, Y&J and Mapp executed a Purchase Order ("Order"). (Doc. 28-3 at 1; *see also, e.g.*, Doc. 32-1 at 1; Doc. 28-3 at 11.) Generally, the Order obligated Y&J to supply Mapp with the "engineering, coordination, supplies and services" necessary for it "to provide a complete and functional system of . . . IMP scope of work for the Project." (Doc. 32-1 at 1; *see also, e.g.*, Doc. 28-1 at 1.) As a result of Mapp's allegedly "consistent pattern of not making payment" and after Y&J had delivered "approximately 63%" of the required IMPs, (Doc. 28-3 at 2; Doc. 12 at 2), the Parties entered into an Assurance of Performance Agreement ("APA") on May 6, 2013, (Doc. 28-1 at 4; *see also, e.g.*, Doc. 28-3 at 16). Then and now, Mapp objected to this "unilateral amendment" due to the absence of any "guarantee of payment" requirement in the Order and purportedly assented only "under duress." (Doc. 28-3 at 16.)

According to Mapp, even after the APA was signed, Y&J's deliveries were neither timely nor complete, necessitating additional testing and delay. (*Id.* at 16–19; *see also* Doc. 12 at 2–3.) Thus, before and after the Project's completion, it accused Y&J of "failure to perform in accordance with the . . . Order." (Doc. 12 at 3.) So convinced, as the Project neared completion, disputes emerged and festered over Y&J's entitlement to an alleged balance under both the Order and the APA totaling $116,978.28. (Doc. 28-3 at 5, 11; *see also, e.g.*, Doc. 12 at 1–2; Doc. 32 at 1.)  This amount represents the alleged contract balance of $110,108.28 as well as a change order in the amount of $6,870. (Doc. 28-3 at 4; *see also, e.g.*, Doc. 28-3 at 11.) Defendant and Plaintiff signed an arbitration agreement ("Agreement") on March 16, 2015, and March 17, 2015, respectively. (Doc. 28-2 at 1–2.) The Agreement broadly circumscribed the pending arbitration's parameters—"any and all disputes relating to or arising out of the . . .  Order and the Project"—

and declared any resulting order to be "binding and non-appealable except for the grounds provided for under the Louisiana Arbitration Act." (Doc. 28-2 at 1, ¶ 12 at 2.)

### 2.    Arbitration

Pursuant to the Agreement, the Parties arbitrated their dispute before Mr. Jerry Householder ("Householder") on April 28, 2015, (Doc. 28-5 at 1), both having submitted detailed position papers before the arbitration commenced, (*See, e.g.*, Doc. 28-3 at 11–21; Doc. 32-1 at 1–11), and after it concluded, (Doc. 28-4 at 1–6, 11–23; Doc. 32-2 at 1–13). Mr. Robert Jamieson ("Jamieson"), Y&J's president, and Mr. Michael Polito ("Polito"), Mapp's President and Chief Executive Officer, testified. (Doc. 16 at 1; Doc. 28-9 at 1; Doc. 28-6 at 4–5.) As Householder later explained, he considered "the arguments presented in the pre-hearing and post-hearing briefs, the oral testimony as reflected in my notes since there was no transcript, and tens of thousands of documents that filled the two bankers' boxes to overflowing." (Doc. 28-6 at 13.) He did not, however, as both Plaintiff and Defendants concede, hear more than a modicum of evidence regarding ostensibly valid and properly executed warranties for the IMPs, Y&J alleging that these documents had been fraudulently signed and submitted to the Project's owner and architect by Mapp or its agents. (*See, e.g.*, Doc. 28-3 at 4–5; Doc. 28-11 at 8–15; Doc. 32 at 1; Doc. 35 at 1.) Y&J attempted to delve into this issue further, but Householder declined to allow it. (Doc. 35 at 1.)

According to the four-page document encapsulating Householder's reasons for the arbitration award ("Award"), signed on June 3, 2015, Mapp had claimed "three back charges as setoff against the contract amount," summing up to $110,108.28, and Y&J had contested all three. (Doc. 28-5 at 1, 4; *see also, e.g.*, Doc. 28-1 at 1.) One back charge related to Y&J's sixteen

gage galvanized angles, Householder determining the nature of Y&J's "obligation" as these sixteen pieces by "only . . . look[ing] at the . . . Order and not arguments made based on other, subsequent documents such as revised shop drawings or bids to perform the disputed work." (Doc. 28-5 at 1.) Classifying these angles as "accessories necessary for a complete system," each "a necessary part of the transitions" and therefore Y&J's duty to provide under the Order, Householder granted the summed costs of these gages to Mapp as "a valid back charge," though not the labor involved in their installation. (Doc. 28-5 at 2; *cf.* Doc. 32-2 at 2.) Thereafter, Householder moved onto ascertaining the true costs involved with extra water testing, Mapp having claimed back charges of $3,150 for this activity. (Doc. 28-5 at 1–2.) Relying on multiple "[c]ontemporaneous documents," Householder found Y&J's delivery for certain materials to have been untimely despite the absence of a definite date; as such, he granted Mapp $3,150 as costs traceable to Y&J's failure to "supply all the IMP as mutually agreed." (*Id.* at 2; *see also* Doc. 32-2 at 5.) Thereupon, Householder moved onto the issue of extended project overhead, Mapp having claimed a setoff figure of $67,498.28. (Doc. 28-5 at 1–2.) Although Householder found "that Y&J's failure did not delay any successor activities, except the water testing," (*Id.* at 2), based on aerial photographs and testimony, he concluded that "panels other than . . . elevator panels were delivered late," and while Mapp had presented evidence of $67,496.28 in "extended job overhead charges," he determined damages to have been only $44,123.81, (*Id.* at 2–3; *see also, e.g.*, Doc. 32-2 at 6). After he added "an additional, undisputed charge against Mapp of $6,870" to these damages, Householder awarded Y&J the total "sum of $39,055.47, together with legal interest from the date of judicial demand until paid," (Doc. 28-5 at 3–4.) Notably, this final figure sharply diverged from both Parties' demands. Mapp had argued for an award of only $6,870, (Doc. 28-4 at 23; Doc. 32-2 at 13), and Y&J had demanded "the full principal balance of

$116,978.28, together with 15% penalties, legal interest from judicial demand until paid, attorney's fees and all costs," (Doc. 28-4 at 7).

Unsatisfied with this fractional grant, Y&J tendered the Motion for Reconsideration on July 1, 2015. (Doc. 28-6 at 1–9.) On July 6, 2015, Householder affirmed his decision. (Doc. 28-6 at 13.) Describing the evidence upon which he professedly relied, he still considered his decision to have been "a fair one." (*Id.*)

## B. PROCEDURAL HISTORY

### 1. Pre-Award Filings and Maneuverings

On July 9, 2014, Y&J tendered the Amended Complaint. (Doc. 4.) Mapp answered on July 20, 2014, (Doc. 10), and filed a counterclaim on December 10, 2014, (Doc. 19), after receiving this Court's permission, (Doc. 18). Y&J answered this counterclaim on December 15, 2014. (Doc. 20.) A joint motion to stay proceedings was filed on March 17, 2015, (Doc. 26), the same day upon which Y&J signed the arbitration agreement, (Doc. 28-2 at 2). This Court granted this motion. (Doc. 27.) Forty-three days after Householder denied its request for reconsideration, Plaintiff filed the Motion. (Doc. 29.) It was followed by the Opposition, (Doc. 32), and the Reply, (Doc. 35). In anticipation of this order, the deadlines set in this Court's scheduling order were continued on February 11, 2016. (Doc. 27.)

### 2. Parties' Arguments

Y&J has set forth four general arguments for the Award's vacatur under Louisiana law in the Motion and the Reply, to each of which Mapp has responded in the Opposition.

The Parties focus upon the standard allowing for an award's nullification where the arbitrator was guilty in refusing to hear evidence pertinent and material to the controversy, a ground encoded in § 4210C. Citing to this paragraph, Y&J argues that Householder's refusal to hear any evidence regarding the allegedly fraudulent IMP warranties satisfies this ground. (Doc. 28-1 at 2–3.) Because Householder chose to do so, he did not have all the necessary evidence in front of him to make the decision and thus deprived Plaintiff of a truly fair adversary hearing. (*Id.* at 4.)

Conversely, Mapp insists that Householder's decision to refuse hearing testimony on the warranties was legally correct and logically justified, as that testimony was neither pertinent nor material to the actual and narrow controversy before him. (Doc. 32 at 1.) Despite Plaintiff's insistence, the controversy was whether Y&J was entitled to the contract balance of $116,978.28; any damages owed due to an improper or invalid warranty were never at issue. (*Id.* at 1–2.) Therefore, Y&J's duties under the Parties' various agreements, the Order and APA, were ultimately unaffected by these warranties' legitimacy. (*Id.*) Mapp adduces two more arguments for why the lack of further questioning as to the IMP's warranties' underlying validity was inconsequential. First, since Polito, Mapp's witness, was never "personally responsible for the allegedly improper IMP warranty," there could be "absolutely no relationship between Polito's explanation as to how the IMP warranties were completed, signed and submitted and his credibility as a witness at the arbitration." (*Id.*) Second, "[t]he only evidence submitted to the arbitrator concerning the sufficiency and validity of the IMP warranty was the evidence submitted by Y&J." (*Id.*) Consequently, Y&J could not have been prejudiced by Householder's decision to limit question as to this side issue "as the only evidence considered by the arbitrator regarding the IMP warranty was that submitted by Y & J." (*Id.* (emphasis in original)).

As a second ground of attack, Y&J turns to § 4210D and maintains that Householder impermissibly exceeded his power, irreparably tainting his final decision. He did so, Y&J contends, when he deliberately determined to consider the Order only and not any subsequent documents, such as the APA. (*Id*. at 4.) To Y&J, the arbitrator thereby exceeded his powers, as "[t]he APA is an agreement entered into after the . . . Order and the APA terms and conditions must be considered because they express the modified terms of the . . . Order and it was signed by both [P]arties." (*Id*. at 4–5.) In contrast, Mapp takes issue with Y&J's reading of the award. Quite clearly, the arbitrator did consider other documents in his decision, as his decision referenced other documents. (Doc. 32 at 3.)  As the Award makes clear, he "look[ed] at the . . . Order" only to determine Y&J's obligation regarding the furnishing of sixteen gage galvanized angles, no more and no less. (Doc. 28-5 at 1.) He rejected "arguments . . . based on other, subsequent documents" solely in analyzing a single issue. (*Id*. at 1, 3–4.) By his own admission, he took much other evidence into consideration when calculating Mapp's justified job overhead charges. (*Id.*)

Next, Y&J argues that an arbitration award may be vacated where the arbitrator so imperfectly executed his rightful power that a mutual, final, and definite award was not made, a second ground of invalidity lodged in § 4210D. (Doc. 28-1 at 5.)  Y&J sets forth three examples of how Householder and the Award violated this statutory standard. (*Id*. at 5–6.)  First, the award makes no mention of Travelers, Mapp's codefendant. (*Id*. at 5.)  Y&J insists that Travelers should be bound, in solido with Mapp for the award and failing to include Travelers in the award constitutes a failure to apply Louisiana Law. (*Id*.)  Secondly, the award easily foments a misunderstanding regarding its true intent, for Householder appears to contradict himself. To wit, he first says that no successor activities were delayed, except for the additional water testing, yet

he eventually granted Mapp extended job overhead charges. (*Id*. at 5–6.)  Lastly, as Y&J tells it, Householder failed to properly compute the undisputed amount actually owed to Y&J. (*Id*. at 6.) The award totaled $6,870; it should have also included $825 relating to the panels for "the monumental signs." (*Id*.) Thus, because the award "did not reflect these sums," Householder "failed to focus on an issue submitted to him." (*Id.*)

To each of these three arguments, Mapp offers a counter. First, as Mapp and Travelers are liable in solido, it was not necessary to mention the latter in the award's text. (Doc. 32 at 3.) This irrelevance is underscored by the fact that Mapp has offered to pay the full amount of the award. (*Id*.)  Additionally, Mapp denies the existence of any contradiction. Quite clearly, the Award explains that the overhead charges increased due to the Y&J's failure to deliver all the materials on time. (*Id*. at 4.)  While this failure did not delay any subsequent activities, it did require more manpower present at the jobsite, thereby increasing the overhead charges. (*Id*.) Successor activities were not delayed, but the untimely delivery still required expenditure of additional manpower. (*Id.*)  Lastly, Mapp argues that failure to specifically address the $825 change order is not sufficient to invalidate the entire award. (*Id*.)

As its final argument,[2] Y&J relies on a scattershot of extra-judicial grounds, moving beyond the Arbitration Act's plain and unambiguous text. (Doc. 28-1 at 6.)  Y&J insists that the combination of not allowing evidence of the warranties, apparent ex parte communications with opposing counsel and/or witnesses, and plain refusal to apply Louisiana law constitutes denial of due process and a fair hearing, an occasionally invoked basis for invalidating an award separate and apart from the Arbitration Act. (*Id*. at 7.) Crucial to this argument is Y&J's allegation that ex

---

[2] Y&J presents this argument as two distinct grounds, though the gravamen remains the same. (*See* Doc. 28-1 at 6–8.)

parte communications between the arbitrator and opposing counsel and/or witnesses occurred. (*Id.* at 8.) Pointing out that Householder utilized an amount of $327,575 in installation labor costs "as his basis for awarding $25,649 in material costs to Mapp," Y&J maintains that no testimony was given or evidence was introduced substantiating this figure. (*Id.*) Therefore, logic suggests that the only way the arbitrator could have decided this amount was from ex parte communications. (*Id.*) Since it likely influenced the arbitrator in his decision and Y&J was not able to rebut it properly, this presumed exchange prejudiced Y&J. (*Id.*) With Mapp so "advantage[d]," Y&J's right to "a fair hearing," "a corollary of which is the right to hear all evidence and argument offered," was violated. (*Id.*)

Mapp derides this accusation as pure conjecture. (Doc. 32 at 4.) Since the arbitration occurred almost six months prior and was not transcribed, it is likely that Mapp's own witness, Polito, volunteered the amount. (*Id.*) Engaging in its own bit of extrapolation, Mapp observes that Polito, as Mapp's head officer, was likely aware of the amount charged by the subcontractor, Roofing Solutions, on the day he testified. (*Id.*) This final ground so weak, Mapp insists that the Award must stand. (*Id.*)

## III.   DISCUSSION

### A.   APPLICABLE LAW[3]

For an arbitration award to be valid, the Arbitration Act sets forth but two requirements: it must be "in writing and . . . signed by the arbitrators or by a majority of them." LA. R.S. § 9:4208; *Guillory Real Estate, Inc. v. Ward*, 296 So. 2d 853, 855 (La. Ct. App. 1974). The

---

[3] In this diversity action, (*See, e.g.*, Docs. 1, 4, 10), in accordance with the Agreement, (Doc. 28-2), Louisiana law governs.

Arbitration Law enumerates four grounds for an award's vacatur: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption on the part of the arbitrators or any of them"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." LA. R.S. § 9:4210; *Detraz v. Banc One Secs. Corp.*, 13-191 (La. App. 3 Cir. 10/09/13); 123 So. 3d 875, 878. This section echoes the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), a similarity which explains Louisiana courts frequent reliance on federal law in their construction of § 4210, *see FIA Card Service, N.A. v. Weaver*, 10-1372 (La. 03/15/11); 62 So. 3d 709, 712. A separate provision governs motions to modify or correct awards. A court is empowered to do so "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," "[w]here the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted," or "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." LA. R.S. § 9:4211; *St. Tammany Manor, Inc. v. Spartan Bldg. Corp.*, 509 So. 2d 424, 425 (La. 1987). As the existence of § 4210 and § 4211 suggest, an award may be imperfect as to form or arithmetic without being so ineradicably invalid as to require invalidation under the former section.

Certain principles influence the courts' interpretation of these sections. Because arbitration is favored in Louisiana, any such proceeding's resulting awards are presumed to be valid. *Dicorte v. Landrieu*, 2008-0249 (La. App. 4 Cir. 09/10/08), 993 So. 2d 799, 801. Unless

grounds for vacating, modifying or correcting the award are established, the award must be

confirmed, and the burden of proof is on the party attacking the award. *Crescent Prop. Partners,*

*LLC v. American Mfrs. Mut. Ins. Co.,* 2014-0969 (La. 01/28/15); 158 So. 3d 798, 804;

*Montelepre v. Waring Architects*, 2000-0671 (La. App. 4 Cir. 05/16/01); 787 So. 2d 1127, 1130.

As such, "[j]udges are not entitled to substitute their judgment for that of the arbitrators chosen

by the parties." *Crescent Prop. Partners, LLC*, 158 So. 3d at 803; *see also, e.g.*, *Nat'l Tea Co. v.*

*Richmond*, 548 So. 2d 930, 932–33 (La. 1989). As this law is presently understood, "[i]t is well-

settled in both state and federal courts that an [arbitration] award may be challenged only on the

grounds specified in the applicable arbitration statutes." *Crescent Prop. Partners, LLC*, 158 So.

3d at 803;[4] *see also, e.g.*, *Hall St. Assocs., L.L.C v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct.

1396, 1403, 170 L. Ed. 2d 254 (2008) (holding that the FAA grounds for vacating an award are

exclusive); *Citigroup Global Mkts., Inc. v. Bacon,* 562 F.3d 349, 358 (5th Cir. 2009) (overruling

all precedent that held non-statutory grounds may support the vacatur of an arbitration award).

Otherwise, arbitration's object—"the speedy disposition of differences through informal

procedures without resort to court action"—would be endangered. *Crescent Prop. Partners LLC*,

158 So. 2d at 803; *see also, e.g.*, *Firmin v. Garber*, 353 So. 2d 975, 977 (La. 1977). As

Louisiana's courts have repeatedly advised, "[a] district court's review of an arbitration award is

---

[4] Prior to this ruling, in addition to the grounds enumerated in § 4210 and § 4211, Louisiana courts had allowed a litigant to attack an arbitration award on the basis of a "manifest disregard of the law," a judicially created ground for vacating an arbitration award. *Welch v. A.G. Edwards & Sons, Inc.*, 95-2085 (La. App. 4 Cir. 05/15/96); 677 So. 2d 520, 524. Plaintiff has invoked these extra-statutory grounds despite this most recent decision, *Crescent Prop. Partners, LLC v. American Mfrs. Mut. Ins. Co.*, by the Louisiana Supreme Court. (*See* Doc. 28-1 at 6–8.) Perhaps more significantly, even if these extra-judicial grounds still retained their validity, they would seemingly be fully preempted by the FAA. *See FIA Card Servs., N.A.*, 62 So. 3d at 712. Nonetheless, in the interest of justice and completeness, this Court will analyze the merits of Plaintiff's contentions. *See infra* Part III.B.4.

extraordinarily narrow" under the Arbitration Act. *FIA Card Servs., N.A. v. Smith*, 44,923 (La. App. 2 Cir. 12/22/09); 27 So. 3d 1100, 1106,

## B.   APPLICATION

As previously summarized, *see supra* Part II.B.2, Plaintiff has asked for the award's vacatur for four broad reasons. First, citing to § 4210C, Y&J rests on Householder's alleged refusal to "hear evidence pertinent and material to the controversy," LA. R.S. § 9:4210C. (Doc. 28-1 at 2.) For its second basis, Plaintiff invokes § 4210D's authorization of vacatur whenever an arbitrator exceeds his or her powers, LA. R.S. § 9:4210D. (Doc. 28-1 at 4.) Third, relying on a separate clause within § 4210D, Plaintiff accuses Householder of "so imperfectly execut[ing his powers] . . . that a mutual, final, and definite award upon the subject matter submitted was not made," LA. R.S. § 9:4210D. (Doc. 28-1 at 5.) Finally, Y&J relies on an extra-judicial prohibition rooted in amorphous principles of fundamental fairness and public policy. (*Id.* at 6–8.)

## 1.   First Asserted Ground: Whether Arbitrator Refused to Consider Pertinent and Material Evidence

Pursuant to § 4210C, an award must fall if the arbitrator "refused to hear evidence pertinent and material to the controversy." LA. R.S. § 9:4210C. In construing the FAA's identical ground, the Fifth Circuit has noted that while the arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments," he or she "is not bound to hear all of the evidence tendered by the parties." *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1023 (5th Cir. 1990) (citations and internal quotes omitted).  To fall within the category of error barred by §  4210C and similar statutes, "[a]n evidentiary error must be one that

is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Id.* In construing § 4210C, Louisiana's own Supreme Court has endorsed such a strict understanding. "Errors of fact or law do not invalidate a fair and honest arbitration award," it wrote more than two decades ago, and "misinterpretation of a contract by an arbitration panel is not subject to judicial correction." *Nat'l Tea Co.*, 548 So. 2d at 932–33; *accord, e.g.*, *Mouret v. Belmont Homes, Inc.*, 12-55 (La. App. 3 Cir. 05/30/12); 91 So. 3d 592, 596. Hence, under federal and state law, for purposes of this narrowest of grounds, "[i]f the arbitrators' decision rests on adequate basis, then complaints that the panel failed to address all issues presented will not render the proceedings 'fundamentally unfair' or justify disturbing the award." *Forsythe Int'l., S.A.,* 915 F.2d at 1023.

Based on this precedent, this Court finds that that the Plaintiff has failed to meet its high burden with convincing evidence. As the Award makes clear, the single issue to be decided was whether Y&J was entitled to receive the unpaid contract balance of $116,978.28.  The validity (or invalidity) of the IMP warranties had no discernible import on the extent to which Y&J itself adhered to its own separate and discrete contractual obligations, as encapsulated in the Order and modified by the APA. Whether or not the warranties existed, Y&J's arguable failure to provide certain accessories and its purported delay in fulfilling its duties under the Parties' contracts formed the singular focus of the dispute before Householder; evidence touching on other tangential issues was beyond the arbitration's predetermined ambit. In fact, Y&J seemingly concedes as much when it contends that "[w]ithout these warranties, Mapp would never have been able to obtain the money from the owner and despite having received that money, Mapp did not pay Y&J." (Doc. 28-1 at 3.) Fundamentally, however, where and how Mapp obtained its financing and whether or not its employees engaged in some form of fraud upon a third party has

no obvious material bearing on whether Y&J itself contravened the contract, with Y&J itself specifically identifying Mapp's alleged "nonpayment" and "fail[ure] to pay Y&J after it had received payment from the [o]wner" as the arbitration's central issue in its pre-hearing position paper, (*See* Doc. 28-3 at 2, 3, 5; *accord* Doc. 35 at 1.) As to that dispute, the IMP warranties possess no patent and material relevance, exclusion of any testimony regarding their validity insufficiently material to offend § 4210C.

Furthermore, due to arbitration proceeding's fundamental purpose, "in the absence of statutory or agreed to procedures, the arbitrators have broad discretion in conducting the proceedings," and "a primary purpose of arbitration is a rejection of civil procedure." *Goodrich Petroleum Co., LLC v. MRC Energy Co.*, 2013-1435 (La. App. 4 Cir. 04/16/14); 137 So. 3d 200, 208. Here, in light of the incontestable fact that this issue was raised, if only briefly, no evidence can be said to have been actually and completely excluded; only further explication was stymied. In short, Householder was fully aware of Y&J's argument and, in the end, found it irrelevant to the central question before him, one upon which both Plaintiff and Defendants agreed: not the reason Mapp had not paid Y&J, but how much Mapp owed. At worst, his decision to hear no more about a potential fraud amounted to a minor "[e]rror[] of fact or law," neither of which can "invalidate a fair and honest arbitration award" under the controlling statute, *Nat'l Tea Co.*, 548 So. 2d at 932–33, and concerned a matter of procedure alone. It did not, by any reasonable understanding and particularly in light of the presumptive validity enjoyed by any award as a matter of Louisiana law, deprive the Plaintiff of a "fair hearing" regarding a truly "pertinent and material" issue. As such, Plaintiff has not crossed the high threshold for invalidation encoded in § 4210C.

2.      **Second Asserted Ground: Whether Arbitrator Exceeded His Powers**

Under § 4210D, an award must be invalidated if an arbitrator "exceed[s his] . . . powers."

LA. R.S. § 9:4210D. As a matter of course, "[i]n determining whether the arbitrator exceeded her

authority, district courts should consult the arbitrator's award itself." *BNSF R.R. v. Alstom*

*Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015). Typically, "[s]everal pieces of relevant

evidence can be gleaned from the award's text, including but not limited to: (1) whether the

arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the

text of the contract; and (3) whether her conclusions are framed in terms of the contract's

meaning." *Id.* As with every other ground, "[a] party seeking relief under th[is] provision bears a

heavy burden," as "[i]t is not enough . . . to show that the arbitrator committed an error – or even

a serious error."  *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113

(2013); *see also, e.g.*, *Nat'l Tea Co.*, 548 So. 2d at 932 ("Errors of fact or law do not invalidate a

fair and honest arbitration award.").  Instead, the question is "whether the arbitrator even

arguably interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford*

*Health Plans LLC*, 133 S. Ct. at 2068; *see also Nat'l Tea Co.*, 548 So. 2d at 933

("[M]isinterpretation of a contract by an arbitration panel is not subject to judicial correction.");

*St. Tammany Manor, Inc.*, 509 So. 2d at 426 ("The court cannot substitute its conclusion for that

of the arbitrator." (internal quotation marks omitted)); *Tower Hill Trading Co., Ltd. v. Howard,*

*Weil, Labouisse, Friedrichs, Inc.*, 96-463 (La. App. 4 Cir. 01/22/97); 687 So. 2d 1096, 1099

("Errors of fact or law do not invalidate an award."). In this ground's exposition, a single

principle is often invoked, informing the courts' attempts to dispel ambiguity: inevitably, the

purpose of arbitration is "thwarted when parties seek judicial review of an arbitration award."

*Nat'l Tea Co.*, 549 So. 2d at 933. As such, "[a]n award, ordinarily, concludes and binds the

parties as to the merits of all matters, properly within the scope of the award and intended by the arbitrators to be finally decided," *Firmin*, 353 So. 2d at 977, so long as the proceedings were "fundamentally fair," perfection neither required nor expected, *Pennington v. Cuna Brokerage Sec., Inc.*, 08-0589 (La. App. 1st Cir. 10/01/08); 5 So. 3d 172, 176.

Having borne a heavy burden, Y&J did not satisfy it.  True, page one of the Award mentions only the Order; true, Householder claimed that "[t]o determine Y&J's obligation, we need only look at the . . . Order and not arguments made based on other subsequent documents such as revised ship drawings or bid to perform the disputed work." (Doc. 28-5 at 1.) However, as the Award makes clear, this assertion was made only in regards to Y&J's duty to provide "certain 16 gage galvanized angles." (*Id.*) In fact, the Award proceeds to specifically mention other "contemporaneous documents" when venturing into analyses of the validity of Mapp's two other claimed back charges, and Householder referenced both emails and testimony after the Award's first page. (*Id.* at 2–3.) Overall, then, the Award quite clearly shows that Householder, the Parties' arbitrator, was aware of and did consider all the documents before him, not just the Order.  Arguably, moreover, Householder's refusal to consider other documents can be construed as related to an even narrower issue: whether or not these gages were essential accessories as the Parties understood them.[5] (*See id.* at 1–2.) In other words, with the Award being accorded presumptive validity under the Arbitration Act, the Court does not find that Householder somehow acted beyond his powers by virtue of a modest refusal to consider other documents as to a narrow subtopic. Rather, because Householder exercised his legitimate

---

[5] It is therefore relevant that Y&J does not show in the Motion how these subsequent documents modified its duty to provide these sixteen gages. (Doc. 28-1 ay 4–5.) It simply broadly asserts that "the language of the arbitration award clearly shows the arbitrator failed and/or refused to consider the terms of the APA." (*Id.* at 5.)

authority "to decide all disputes which may arise between the parties in the course of the arbitration" and disregard technical rules of civil procedure, LA. CIV. CODE. art. 3122, the record evinces no usurpation forbidden by the Arbitration Act. Accordingly, Y&J's assertion that Householder somehow wandered beyond his proper sphere, an assertion that rests entirely on a single sentence on the Award's first page, cannot be squared with the document itself, fully and holistically read in the manner compelled by longstanding jurisprudence.

**3.      Third Asserted Ground: Whether the Award is Not Mutual, Final, or Definite**

Per § 4210D, an award must be invalidated if an arbitrator so "imperfectly executed" his or her powers "that a mutual, final, and definite award upon the subject matter submitted was not made." LA. R.S. § 9:4210D. Louisiana courts have found that "[a] final and definite award must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligation of the parties under the award." *D&B Framing, Inc. v. Harris Builders, L.L.C.*, 2010-0591 (La. App. 4 Cir. 08/27/10); 47 So. 3d 634, 637. Admittedly, "[t]he Fifth Circuit has not specifically addressed the standard for determining whether an arbitration award . . . is definite" under the FAA.  *McVay v. Halliburton Energy Servs., Inc.,* 608 F. App'x 222, 225 (5th Cir. 2015).  It has, however, held in the past that "an arbitrator had not imperfectly executed their power [when] the award and statement was clear and concise and lacked any hint of ambiguity." *Id.* (citations and internal quotes omitted).

For purposes of this ground, the question before the Court is simple: whether the Award resolved all issues and, if honored, required no further litigation to be finalized, with arithmetical modification or correction insufficient to render an award invalid, *see supra* Part III.A. Distilled, none of Y&J's arguments as to this prong are convincing, not one strong enough to overturn the

presumption. True, the Award does not specifically name Travelers, but, as Defendants persuasively and correctly contend, Travelers is a surety that remains liable in solido with Mapp, which has already agreed to pay the full award on both Defendants' behalf. Thus, the fact that the Award "does not even mention Travelers at all" cannot be fatal, for Travelers' absence does not prevent Y&J from obtaining enforcement, i.e. payment for the fully assessed sum. True, Householder concluded that Y&J's failure did "not delay any successor activities, except water testing," and later awarded Mapp with "extended job overhead charges." (Doc. 28-1 at 5–6; *see also* Doc. 28-5 at 2–3.) In Plaintiff's view, this seeming discrepancy was an ineradicable and fatal contradiction, one that "cause[s] a misunderstanding of the intent of the award." (Doc. 28-1 at 5.) Yet, as Mapp has pointed out, (Doc. 32), and as the Award discloses, (Doc. 28-5), the additional overhead charges resulted from Y&J's adjudicated failure to deliver the required materials in a timely manner. In other words, though no activities besides water testing were delayed, more manpower was required to ensure the Project's timely completion; that certain activities were not delayed does not mean that Mapp did not incur additional costs and expenses in preventing Y&J's delayed delivery from hindering the overall enterprise's completion. Simply put, while an unduly technical reading of the Award may produce a contradiction, a reasonable construction can readily harmonize this apparent inconsistency, and well-settled law compels such a reading, the burden upon Plaintiff to pinpoint a truly irreconcilable incongruity. That Householder may have arguably disregarded the statements of certain witnesses in reaching his conclusions, of course, cannot prove the reality of a contradiction, for he, like any other factfinder, had the right to weigh the evidence, on the basis of credibility and more, on his own. *Cf. Crescent Prop. Partners, LLC*, 158 So. 3d at 803 ("Judges are not entitled to substitute their

judgment for that of the arbitrators chosen by the parties."); *ConstructionSouth, Inc. v. Jenkins*, 12-63 (La. App. 5 Cir. 06/28/12); 97 So. 3d 515, 522 (same).

  Finally, even if the Award, as Y&J contends, "failed to address an undisputed amount" of $825, (Doc. 28-1 at 6), it means no more than that Householder's calculations were imperfect. While it would not necessarily be "absurd . . . to argue that the arbitration award should be vacated because it does not address an undisputed amount," as Defendants contend, (Doc. 32 at 4), it would violate the cardinal rule to interpret related statutes *in pari materia* for a single reason: § 4211 already provides a route for the correction of a simple miscalculation which neither party disputes, such a mistake insufficient to fully becloud an award's acceptability under the Arbitration Law.

  In sum, when considered in toto, none of Plaintiff's three asserted grounds for invalidating the Award under this clause encoded in § 4210D withstand the diligent scrutiny required of this Court. As the Plaintiff bore the high burden of proving this ground, this Court therefore declines to void the Award on the basis of a seeming contradiction, one that can be resolved based on the Award's plain and unambiguous terms or, if necessary, be corrected via a more narrowly tailored motion.  No other defect argued by Plaintiff leaves this Court convinced that the Award failed to "resolve all the issues submitted to arbitration, and determine each issue fully" in such a way as to leave it impossible to finalize the Parties' separate duties. *D&B Framing, Inc.*, 47 So. 3d at 637. This Court can do so; hence, the Award must survive § 4210D.

**4.**  **Fourth Claimed Ground: Whether Arbitrator Violated Extra-Statutory Duties**

  To the Plaintiff's fourth claimed ground of invalidation, precedent compels two responses.

First, while an award may be invalided for a number of separate reasons under § 4210, *see supra* Part III.A, "[i]t is well-settled in both state and federal courts that an [arbitration] award may be challenged only on the grounds specified in the applicable arbitration statutes." *Crescent Prop. Partners, LLC,* 158 So. 3d at 803. Without question, multiple Louisiana courts have recognized the existence of non-statutory defenses in the last few decades. *Cf. Preis Gordon APLC v. Chandler*, 2015 0958 (La. App. 1 Cir. 02/26/16); 2016 La. App. LEXIS 375, at *10, 2016 WL 760107, at *4. Citing to *Crescent Property Partners* and *Hall Street Associates*, Plaintiff maintains that this ground retains its viability. (Doc. 28-1 at 6–7.) Yet, in the former case, Louisiana's supreme tribunal actually denied its continued existence, relying in part on *Hall Street Associates*: "This court has not adopted such a ground, and at least one circuit has declined to do so," calling into question its validity on the basis of the latter opinion by the United States Supreme Court. *Crescent Prop. Partners, LLC*, 158 So. 3d at 803 n.13.[6] While the court declined to address the applicability of this non-statutory ground, it thus raised serious doubt about its relevance. That doubt, one heightened by this ground's nonexistence under a fully preemptive FAA, *see supra* note 4, already militates against voiding the Award on the basis of an alleged "manifest disregard of the law." *See Citigroup Global Mkts., Inc. v. Bacon,* 562 F.3d 349 (5th Cir. 2009) (holding that "manifest disregard of the law" after *Hall Street Associates* is no longer an independent ground for vacatur of an arbitration award under the FAA). For this reason, the Plaintiff's failure to meet its burden of proving the explicit bases for vacatur inlaid in § 4210 must be deemed dispositive, however appealing its non-statutory arguments may be.

---

[6] While Y&J cites to this footnote's discussion of the manifest disregard standard, (Doc. 28-1 at 7), it ignores the caveat quoted here and that appears in the footnote's second paragraph.

Nonetheless, even if this Court presumes this extra-textual defense has somehow survived, Plaintiff has not met its burden of proving the essential and well-established predicates of this extra-statutory doctrine. Crucial to this analysis is the argument for its invocation actually made by Plaintiff, Y&J's attack resting on two purported and discrete acts: Householder's failure to consider further evidence regarding the IMP warranties and alleged ex parte communication, (Doc. 28-1 at 7–8). This Court considers each argument in turn.

First, the mere exclusion of evidence, like the IMP warranties, will not suffice to violate this nebulous doctrine. As a matter of standard practice, this fourth and final ground has been mostly saved for the most egregious cases involving violation of fundamental due process of law, *Mayeaux v. Skyco Homes*, 13-1053 (La. App. 3 Cir. 07/02/14); 161 So. 3d 765, or errors so "obvious and capable of being readily and instantly perceived by an average person qualified to serve as an arbitrator," *Crescent Prop. Partners, LLC*, 158 So. 3d at 803 n.3. But *Mayeaux*, the case cited by Plaintiff, specifically stated that "[t]he four grounds [set forth in LA. R.S. § 9:4210] which require a reviewing court to vacate an arbitrator's award are broad in scope and provide sufficient leeway to correct fundamental due process violations" and relied upon the lower court opinion overturned by the Louisiana Supreme Court in *Crescent Prop. Partners, LLC*. *Mayeaux*, 161 So. 3d at 768 (quoting *Crescent Prop. Partners, LLC v. Am. Mfrs. Mut. Ins. Co.*, 2013-0661 (La. App. 4 Cir. 02/28/14); 134 So. 3d 85, 89). Properly read, then, the limited and arguably invalid *Mayeaux* does not seem to actually authorize consideration of non-statutory factors; it certainly does not classify the exclusion of arguably pertinent evidence, already barred by § 4210C, as justice's grievous miscarriage. Accordingly, Plaintiff's failure to meet its burden of proving its first statuary argument as to the warranties' relevance, *see supra* Part III.B.1, must be deemed just as terminal for this argument's success.

Plaintiff's second argument for a finding of this final ground—that "it is apparent that the arbitrator had ex parte communication with opposing counsel and/or the witness for Mapp," (Doc. 28-1 at 8)—is equally unavailing. For sure, "[a]rbitrators cannot conduct ex parte hearings or receive evidence except in the presence of each other and of the parties, unless otherwise stipulated." *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 653 (5th Cir. 1979) (citations omitted). So far, however, Y&J has given no evidence of such ex-parte communication, relying purely on a conclusory assertion: evidence regarding the cost of Roofing Solution's installation "was not presented in testimony or introduced into evidence," (Doc. 28-1 at 8). (*See* Doc. 32 at 4.) Meanwhile, Mapp has credibly argued that its own witness, Polito, offered the evidence. (Doc. 32 at 4.) Without a transcript in which every bit of testimony could be combed, this dispute cannot be definitely resolved, and while its unfortunate absence perhaps accounts for this ambiguity, "the burden of proof" for any ground to invalidate an arbitration award squarely "rests upon the party attacking the award." *Crescent Prop. Partners,* 158 So. 3d at 804. Here, that party is Y&J, which has instead proffered speculation that can be neither proven nor disproven. With this Court obliged to presume an award's validity and with this extra-judicial attack of questionable cogency, extrapolation and guesswork will not do, especially once a colorable explanation has been offered, (*See* Doc. 32 at 4). So far, Plaintiff has presented no more, and its argument for vacatur on the basis of this final ground must therefore fail.

## IV.   CONCLUSION

Based on the foregoing, this Court finds that, pursuant to the Arbitration Act, Plaintiff has not met its burden of proving a valid ground for vacating the Award. Plaintiff has failed to show

that truly relevant evidence was ignored or that specified powers were clearly exceeded. The Award, meanwhile, is sufficiently definite for this statute's minimal purposes, and and no gross unfairness is indubitably apparent. As such, the **Motion to Vacate Arbitrator's Award Filed on Behalf of Yancey & Jamieson, Inc.**, (Doc. 28), is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 10, 2016</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**